Petition for Writ of Habeas Corpus of Richard Henry DARE.

No. A–13142.

Court of Criminal Appeals of Oklahoma.

March 21, 1962.

As Corrected April 5, 1962.

Rehearing Denied April 12, 1962.

Charles W. Adams, Maurice Nagle, Oklahoma City, for petitioner.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for respondent.

BUSSEY, Judge.

This is an original proceeding by Richard Henry Dare to secure his release from confinement in the State Penitentiary at McAlester, Oklahoma, where he is presently confined under sentence of death by virtue of a judgment and sentence rendered against him in case number 26,547 on the 9th day of June, 1961, in the District Court of Oklahoma County, Oklahoma.

We observe that a timely appeal has been perfected to this court from the judgment and sentence rendered against him in case number 26,547, in the District Court of Oklahoma County on the 9th day of June, 1961.

The general rule is that the Court of Criminal Appeals will deny habeas corpus when an appeal is pending from the same judgment and sentence. See Ex parte Anderson, 73 Okl.Cr. 97, 118 P.2d 404.

However, this rule cannot apply when the habeas corpus proceeding challenges the jurisdiction of the trial court.

The question thus posed is whether the trial court had the necessary requisites of jurisdiction. These are, (1) jurisdiction over the subject matter—the subject matter in this connection was the criminal offense of murder, (2) jurisdiction over the per-

son, and (3) the authority under law to pronounce the particular judgment and sentence herein rendered.

Article VII of the Oklahoma Constitution vests in the District Courts of Oklahoma the trial jurisdiction in felony cases.

Article II, Section 20, of the Oklahoma Constitution vests in the courts of the county wherein crimes are committed, the territorial jurisdiction over the subject matter.

Article II, Section 17, provides that felonies may be prosecuted by presentment or indictment or by information.

In Pierro v. Turner, 95 Okl.Cr. 425, 247 P.2d 291, this Court said:

"The Constitution of Oklahoma, Art. II, § 17, authorizes prosecutions for felonies by information after examination and commitment by a magistrate, or by indictment by a grand jury. These are concurrent remedies and the prosecution may be by either mode."

Hence, the trial court may acquire jurisdiction over the subject matter, person, and the authority to pronounce judgment and sentence when an information is filed in the district court setting forth all of the necessary allegations charging the commission of a felony and when the defendant enters a plea thereto and proceeds to trial. Thereafter, the trial court may lose jurisdiction if in the course of its proceeding, the fundamental and inalienable rights of the accused are denied without the accused having waived them. See Application of Fowler for Writ of Habeas Corpus, Okl. Cr., 356 P.2d 770.

In the Fowler case the court did not lose jurisdiction over the subject matter, nor did it lose the authority to pronounce the sentence imposed.

It did, however, lose the jurisdiction over the person, after having acquired it, by admitting into evidence a confession obtained in the denial of the constitutional rights of the accused to due process of law.

An examination of the case made filed in the cause now pending on appeal, discloses that the petitioner was charged in the District Court of Oklahoma County and that said information states all the necessary allegations sufficient to charge the petitioner with the crime of murder.

Murder is defined under the provisions of Title 21 Okl.St.Ann. § 701 as a felony, the punishment for which may be either life imprisonment or death. Thus, it appears that the District Court of Oklahoma County had jurisdiction over the subject matter and the authority under law to pronounce the particular sentence herein imposed.

In considering the contentions raised by the petitioner, we will therefore determine whether or not the trial court acquired jurisdiction over the person of Richard Henry Dare, and if such jurisdiction was ever acquired, whether it was lost as a result of a denial of the defendant's constitutional rights to due process of law.

Since the petitioner makes several assignments of error which involve various stages in the proceedings from his arrest to his trial, we will, at the outset, make a brief statement of the facts as revealed by a careful examination of the preliminary transcript attached to petitioner's application for writ of habeas corpus, the case made in the cause pending on appeal, and statements of the petitioner contained in his "Brief Supporting Petition of Petitioner."

Such examination discloses that on the afternoon of August 5, 1960, the petitioner went to the home of Ted Albert at 1737 Southwest 16th Street, Oklahoma City, Oklahoma, and while there took the lives of his, the petitioner's estranged wife, Patricia Ann Dare, his mother-in-law, Virgie Albert, his wife's nephew, William McCormick, and the aforesaid Ted Albert.

Thereafter, on Sunday evening, August 7, 1960, at about 10 p. m., at the home of his sister, Mrs. Orbie Carter, located in McClain County, Oklahoma, the petitioner surrendered to Sheriff Joe Huddleston, of McClain County, who took the petitioner to McClain County Courthouse, gave him a coca cola and a sandwich and thereafter

surrendered him to Don Cunningham of the Oklahoma Crime Bureau. Mr. Cunningham and Captain Jack Mullenix of the Oklahoma City Police Department then transported the petitioner to the Oklahoma City Police Department, a distance of approximately forty miles. In the record it appears that Agent Cunningham advised the petitioner of his constitutional rights and that, thereafter the petitioner confessed to the slayings heretofore referred to.

The confessions were recorded on five separate recordings. One confession detailing the four slayings and the other four containing the separate details of each slaying. The record further discloses that the questioning of the petitioner began about 11:30 p. m. on August 7, 1960, and terminated approximately two and one-half hours later.

Subsequently, on the 8th day of August, 1960, the County Attorney of Oklahoma County, James W. Bill Berry filed four preliminary informations, each charging the defendant Dare with murder, in the Justice of the Peace Court of the Honorable Marvin Cavnar for the Oklahoma City District, Oklahoma County, Oklahoma, who issued a warrant for the arrest of Dare, who was served and then committed to the Oklahoma County Jail without bail and ordered held for the Grand Jury.

It further appears that on September 13, 1960, County Attorney Berry dismissed the charges which were filed in the Justice of the Peace Court of the Honorable Marvin Cavnar, and thereafter filed four separate preliminary informations, each charging the defendant with murder, and that warrants for the arrest of the petitioner were issued and served and he was again committed to the Oklahoma County Jail without bail and ordered held for the Grand Jury. Preliminary hearings were set for September 27, 1960, and Attorney Ralph Samara was appointed by the court to represent the petitioner at these preliminary hearings.

Thereafter, the petitioner was bound over to stand trial for murder in the District Court of Oklahoma County, Oklahoma.

It appears from the record that Mr. Homer Thompson, the then Public Defender in and for Oklahoma County was appointed by the trial court to defend the petitioner when petitioner appeared for arraignment and that on the 10th day of October, 1960, Mr. Thompson filed a request to commit the defendant to Central State Griffin Memorial Hospital at Norman, Oklahoma, whereupon on that same day the Honorable Glen O. Morris, one of the District Judges in and for Oklahoma County, directed that Richard Henry Dare be committed to Central State Griffin Memorial Hospital, for a period of observation not to exceed ninety days. The record discloses that on December 30, 1960, District Judge Morris entered his order to return the petitioner to Oklahoma County, and making a further finding that "observation has disclosed that said defendant has been found to be without mental disorder."

The record further discloses that on March 6, 1961, petitioner, through his attorney, Public Defender Don Anderson, who succeeded Mr. Homer Thompson in that office, filed a motion to direct the proper officials at Central State Griffin Memorial Hospital to file a written report relating to:

1. The ability of the petitioner to assist in preparation of his case for trial (present sanity.) and,

2. Requiring that said officials report on the ability of the petitioner to distinguish right from wrong at the time the particular homicide herein involved was committed.

This motion was apparently never considered by the trial court, and the record does not reveal that it was ever brought to the attention of the trial court.

On the 8th day of May, 1961, petitioner stood trial in the District Court of Oklahoma County and subsequently on June 9, 1961, judgment and sentence of death was rendered against him.

From which judgment and sentence, an appeal was taken and the "Petition for Writ of Habeas Corpus" herein considered filed in this court.

The first assignment of error urged by the petitioner is that the public officials who took petitioner into custody and exercised custody over him failed to take petitioner before a magistrate for a period of thirty-three days and that this was a deprivation of the petitioner's rights and a denial of due process of law under the following constitutional and statutory authority:

United States Constitution, Amendment No. 5.

United States Constitution, Amendment No. 6.

United States Constitution, Amendment No. 14.

Oklahoma Constitution, Art. 2, § 7.

Title 22 Okl.St.Ann. § 181.

Title 21 Okl.St.Ann. § 534.

Under this assignment of error, the petitioner argues as follows:

"that failure of Sheriff Joe Huddleston of McClain County, Oklahoma, to carry petitioner before a magistrate; not necessarily immediately or forthwith; But before he took him any place besides his own personal custody or surrendering the custody of his prisoner, your petitioner, to the custody of Don Cunningham of the State Crime Bureau and Captain Jack Mullenix of the Oklahoma City Police Department thereby opening the avenues for the continuation and repeated violations and denials of petitioner's rights."

In connection with this assignment of error, the petitioner cites Title 22 Okl.St. Ann. § 181, which provides:

"The defendant must, in all cases, be taken before the magistrate without unnecessary delay."

In consideration of the record, we are of the opinion that the petitioner's first assignment of error is completely without merit.

Article II, § 20 of the Oklahoma Constitution provides in part as follows:

"In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed: Provided, that the venue may be changed to some other county of the State, on the application of the accused, in such manner as may be prescribed by law. * * * "

■■ Under this provision it is abundantly clear that the courts of McClain County did not have jurisdiction over the criminal offense for which the defendant was arrested, but that the territorial jurisdiction to try the petitioner is vested in the courts of Oklahoma County. We know of no provision of law which requires that the sheriff of one county who apprehends, without a warrant, a suspect wanted in another county of the state for a capital offense to transport the suspect to the latter county and arraign him before a magistrate there, nor do we deem it a duty of the arresting officer to take a suspect before a magistrate not having territorial jurisdiction of the offense. Reason and logic dictate that upon the arrest of an accused by an officer in a county wherein the offense was not committed, the arresting officer should transfer custody of the accused to an officer of the county having jurisdiction over the offense without unnecessary delay.

■ Therefore, we are of the opinion that no constitutional or statutory right of the accused was violated when Sheriff Joe Huddleston of McClain County surrendered custody of the petitioner to Agent Don Cunningham and Captain Jack Mullenix on August 7, 1960.

The second facet of the petitioner's first assignment of error, is that petitioner was not taken before a magistrate for a period of thirty-three days.

It is true that the petitioner was not arraigned upon the particular preliminary complaint which formed the foundation upon which he was tried in the instant case until September 13, 1960, but from the foregoing statement of facts it affirmatively appears that he was held by virtue of an order of commitment under four preliminary com-

plaints whose validity are not herein questioned, and that upon a dismissal of these complaints on September 13, 1960, four new preliminary complaints were filed, including the preliminary complaint forming the foundation for the information herein involved, and on that date the court appointed Attorney Ralph Samara to represent the petitioner.

There is nothing in the record to indicate that the petitioner's rights were adversely affected by the delay in appointment of counsel for the petitioner from August 7, 1960, until September 13, 1960, when the court appointed Attorney Ralph Samara to represent the petitioner.

We are of the opinion that the defendant's rights granted under Title 22 Okl.St. Ann. § 181, were fully protected and that the delay in the instant case was not an unnecessary delay but one which was proper under the circumstances.

The petitioner urges as his second assignment of error that the taking of the petitioner's statement or confession prior to arraignment, without benefit of counsel constituted a fundamental violation of the rights conferred upon the petitioner by the Fifth and Sixth Amendments to the Constitution of the United States and Article Two of Section Seven of the Oklahoma Constitution.

The petitioner relies upon and urges the adoption of the interpretation of Federal Rule No. 5, Fed.Rules Crim.Proc. 18 U.S. C.A., as annunciated by the Supreme Court of the United States in the following cases: McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; Anderson v. United States, 318 U.S. 350, 63 S.Ct. 599, 87 L. Ed. 829; Ashcraft v. Tennessee, 322 U.S. .143, 64 S.Ct. 921, 88 L.Ed. 1192; Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479;

Section (a) of Federal Rule No. 5 reads as follows:

"Appearance before the Commissioner. An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States. When a person arrested without a warrant is brought before a commissioner or other officer, a complaint shall be filed forthwith."

In this line of cases, the United States Supreme Court has held that delay in taking an accused before a committing magistrate and receiving a statement or confession from such accused prior to his appearance before a committing magistrate may render such statement or confession, taken during such period, inadmissible in a subsequent trial.

It will be observed from an examination of Federal Rule No. 5, section (a) that its language is very similar to that contained in Title 22 Okl.St.Ann. § 181.

In the cases above cited the federal courts have interpreted this rule as procedural only. The Oklahoma courts have also interpreted Title 22 Okl.St.Ann. § 181, as procedural and have never recognized a breach of this statute as one involving a constitutional question.

This being true, we hold that the interpretation of this procedural statute, Title 22 Okl.St.Ann. § 181, is vested in the courts of Oklahoma, and that this court is not bound to follow the interpretation placed on a similar federal statute by a federal court.

The Oklahoma courts have never applied the interpretation of Federal Rule No. 5(a), as annunciated in the above cited Federal cases, to Title 22 Okl.St.Ann. § 181, and this court has never held that taking a statement or confession of an accused person prior to his arraignment will per se vitiate such statement or confession nor render it inadmissible upon a subsequent trial of the accused.

In considering the admissibility of a confession we follow the rule set out

in Henderickson v. State, 93 Okl.Cr. 379, 229 P.2d 196, which is as follows:

"A confession is inadmissible if obtained under any form of compulsion, so that to receive it in evidence would violate the defendant's constitutional privilege against self-incrimination and is inadmissible if made under such circumstances of hope or fear as to create a fair probability of its testimonial untrustworthiness.

"Prima facie any confession is admissible in evidence and where its admissibility is challenged by defendant, burden is on him to show that it was procured by such means or under such circumstances as to render it inadmissible, unless evidence on part of state tends to show that fact."

█ It appearing that the petitioner does not allege that the confessions were obtained through duress and only that they should not have been admitted under Federal Rule No. 5, we will more fully consider the admissibility of the confessions under the assignments of error raised on appeal. Under the questions herein raised, we are of the opinion that the confessions were not rendered inadmissible merely because they were made prior to arraignment and without counsel being present.

The petitioner's next five contentions of error will be considered together for the principle of law determinative of each of the issues raised is the same.

These contentions of error briefly stated are as follows:

1. The petitioner avers that on August 1, 1960, a grand jury was convened in Oklahoma County, Oklahoma, and that while it was in session, the petitioner was arrested, charged with four preliminary complaints and held without bond and that the charges upon which he was being held were never presented to the grand jury as required by Title 22 Okl.St.Ann. § 258, paragraph No. 4, which reads as follows:

"If a preliminary information be filed or is pending within three days before the grand jury convenes, or while it is in session, no examination shall be had, but the accused shall be held under bond or confined until the matter can be submitted to that grand jury or until that body adjourns."

2. The petitioner avers as his fourth assignment of error that the Grand Jury, which he alleges was in session at the time of petitioner's arrest and incarceration in the Oklahoma County Jail, failed to carry out its statutory duty, under Title 22 Okl. St.Ann. § 338 subd. 1, to "inquire into the case of every prisoner imprisoned in the jail of the county or subdivision, on a criminal charge, and not indicted."

3. The petitioner avers as his fifth assignment of error that it was a violation of his constitutional and statutory rights when a single preliminary hearing was held on four separate preliminary complaints over the objection of his court appointed attorney.

4. The petitioner's sixth contention of error is that the filing of 'four informations' while the Grand Jury was still in session and while the defendant was confined in jail without bond, and without benefit of legal counsel and without being served with a copy of the informations was a violation of the petitioner's rights and a denial of due process of law to the petitioner.

5. The seventh contention of error urged by the petitioner is that Mr. Homer Thompson, Public Defender for Oklahoma County, who was appointed by the court, failed to make any investigation into the records of the proceedings held prior to the filing of the aforesaid informations before pleading to the informations, constituted a denial of due process of law to the petitioner.

█ These contentions of petitioner would raise a serious question as to the validity of the preliminary proceedings had they been properly preserved and objected to on arraignment in district court prior to petitioner's entry of a plea to the information, but we believe that the following au-

thorities support the principle that the alleged errors were waived; State v. Frisbee, 8 Okl.Cr. 406, 127 P. 1091, and cited with approval in Daniels v. State, 55 Okl.Cr. 298, 29 P.2d 997, Coppage v. State, 62 Okl.Cr. 325, 71 P.2d 509, and Kennamer v. State, 59 Okl.Cr. 146, 57 P.2d 646.

In State v. Frisbee, 8 Okl.Cr. 406, 127 P. 1091, this court said:

"A defendant in a criminal case may waive any right not inalienable, given him by the Statute or by the Constitution, either by express agreement or conduct, or by such failure to insist upon it in seasonable time as will operate as an estoppel to his afterwards setting it up against the State."

■ This court further elaborated on this principle in McGilvery v. State, 50 Okl.Cr. 376, 298 P. 312, wherein the court stated:

"The decisions of courts are uniform to the effect that jurisdiction of the person may be waived and that it is waived whenever the defendant enters into a recognizance for his appearance or pleads to the merit of the action.

"Whenever a defendant desires to question the jurisdiction of the court over his person, he must do so at the very first opportunity and in such manner as not to surrender to the court the jurisdiction of his person."

■ The most recent decision reiterating the principle is Ervin v. State, Okl.Cr., 368 P.2d 256, in which this court, speaking through the person of the Honorable John A. Brett, declared:

"The entire preliminary proceedings may be waived in the trial court and are waived by failure to file a motion to quash or set aside the information as provided by the statute before entering a plea on the merits. [See Ex parte Musgrave, 88 Okl.Cr. 192, 201 P.2d 272, and] Ex parte Owen, 82 Okl. Cr. 415, 171 P.2d 868."

■ A review of the case made discloses the defendant never questioned the regularity of the preliminary proceeding after being arraigned in the District Court of Oklahoma County, Oklahoma, and that although Homer Thompson, the then Public Defender in and for Oklahoma County, filed a request to commit the defendant to Central State Griffin Memorial Hospital at Norman, Oklahoma on the 10th day of Oct. 1960, and thereafter Don Anderson, Mr. Thompson's successor, filed a request for further psychiatric examination in the office of Dr. Charles E. Smith of Oklahoma City, Oklahoma, which was granted three months prior to the trial, the said attorneys never sought to withdraw the defendant's plea and interpose a motion to quash in the manner outlined in Ervin v. State, supra.

As has been stated many times by this court, an accused may waive his right to a preliminary hearing or to irregularities in that hearing.

The writer is well acquainted with the professional capabilities of former Public Defender, Homer Thompson and of Public Defender, Don Anderson, and is confident that Messrs. Thompson and Anderson were well familiar with the rule set forth in the cases above cited. It is probable that realizing that they could obtain a preliminary hearing by withdrawing the petitioner's plea of not guilty and filing a motion to quash, Messers. Thompson and Anderson did not wish to further delay the trial on its merits.

It is highly questionable what benefit could have been gained by remanding this cause to the justice of the peace court for a new preliminary hearing.

We therefore hold that petitioner waived the procedural errors herein complained of when he failed to withdraw his plea of not guilty and file a motion to quash prior to proceeding to trial on the merits.

■ And that the failure of his court appointed attorneys to request a new preliminary hearing was a matter resting in their discretion based upon their experience and personal qualifications and did not constitute error prejudicial to the rights of the petitioner.

We shall next consider petitioner's assignment of error that he was denied representation by counsel in denial of his constitutional and statutory rights of aid of counsel. While it is undoubtedly true that a single court appointed attorney representing the accused through the preliminary proceedings and trial would have provided a greater continuity in the defense of petitioner, such a requirement has never been adopted in this state. There are many instances where the attorney representing the accused at preliminary hearing is succeeded by or replaced by other counsel representing the accused at the trial of the cause on its merits.

In the instant case Mr. Samara represented the accused at the preliminary hearing. When the petitioner appeared for arraignment the then Public Defender Homer Thompson was appointed by the court to represent the petitioner. Thereafter, Homer Thompson became assistant county attorney of Oklahoma County and was replaced by Mr. Don Anderson as Public Defender of Oklahoma County.

In the case at bar, it affirmatively appears that some three months prior to proceeding to trial Mr. Anderson made his first appearance for petitioner and even the most cursory review of the trial transcript discloses that Mr. Anderson capably represented the petitioner and presented the defense in a manner most favorable to his cause. We therefore are of the opinion that his assignment of error is without merit.

The contention urged by the petitioner that the failure of Homer Thompson to withdraw from the case and failure of the court's minutes to reflect the appointment of Mr. Anderson to represent the petitioner constituted a violation of the statutory and constitutional rights of the accused is submitted without supporting authority.

We are inclined to agree with the response of the Attorney General of Oklahoma wherein he states:

"That Homer Thompson was not appointed to represent the defendant. It was Homer Thompson as public defender who was directed by the Court to appear for him. When Homer Thompson became Assistant County Attorney and Don Anderson succeeded him as public defender, it automatically became the duty of Don Anderson to appear for this defendant. When a county attorney goes out of office and another succeeds him, it does not require any court order for the new county attorney to appear in all matters which have been handled by the preceding county attorney."

We are of the opinion that when the Public Defender resigns from office and is replaced, it is automatically the duty of his successor as public defender to represent all persons whose defense has been assigned to that office.

It is next urged by the petitioner that the trial court erred in proceeding to trial before ruling on petitioner's motion filed March 6, 1961, requesting that the court direct the proper officials at Central State Griffin Memorial Hospital to file a written report relating to:

1. The ability of the petitioner to assist in preparation of his case for trial (present sanity).

and,

2. Requiring that said officials report on the ability of the petitioner to distinguish right from wrong at the time the particular homicide herein involved was committed.

Examination of the case made discloses that on October 10, 1960, the Honorable Glen O. Morris, one of the district judges in and for Oklahoma County, directed that Richard Henry Dare be committed to Central State Griffin Memorial Hospital, Norman, Oklahoma, for a period not to exceed ninety days and that:

"After completion of its observation the institution will immediately furnish to this court a report of its findings as to the sanity or state of mental health of said defendant."

On the 24th day of December, 1960, a letter from James M. Berhman, M.D., Court Case Consultant at Central State Griffin Memorial Hospital was directed to District Judge Glen O. Morris. The letter contained a lengthy biographical sketch of petitioner, Richard Henry Dare, and included the following statements:

"His mental functioning is characterized by rather total deficit in normal social emotions. There is a cold, unemotional distant vaccum surrounding his whole behavior. He tells of his affection for his wife and of the events of the murder with the same detached lack of emotion. There seems to be a total hunger for acceptance which he has never known and does not hope to have. He fluctuates between indifference towards it's absence and rather highhanded claims for it.

"This man has a personality disorder which is characterized by depression and helplessness and episodes of raw total aggression. In many settings he would be quite safe, but he can tolerate no frustration whatsoever. This requires, of course, that he be put in a setting where his raw frustration can be managed. Perhaps it is superfluous to say he is an extremely dangerous person."

Thereafter on December 30, 1960, the Honorable Glen O. Morris, entered the following order:

"Upon showing by James W. Bill Berry, the duly elected, qualified and acting County Attorney of Oklahoma County, State of Oklahoma, that the above named defendant having previously been committed to the Central State Griffin Memorial Hospital for the insane at Norman, Oklahoma, by order of this Court, for a temporary period of observation, which commitment and observation has disclosed that the said defendant has been found to be without mental disorder.

"IT IS, THEREFORE, ORDERED that the said defendant, Richard Henry Dare, be returned to Oklahoma County, State of Oklahoma by the Sheriff of this County, for the purpose of answering charges contained in the Information filed herein.

"Done By Order of the District Court of Oklahoma County, State of Oklahoma, this 30th day of December, 1960."

Title 43A Okl.St.Ann. § 60 provides:

"If any person is held in confinement because of criminal charges, or if he has criminal charges pending or likely to be filed against him, or if he has been taken into custody because of a criminal act or acts, and the question arises as to his sanity or state of mental health, such individual may be ordered by a court of record having jurisdiction of the criminal proceedings into a State Hospital within the Department for observation for a period not to exceed ninety (90) days."

Nothing under this statute or any other statute of the State of Oklahoma requires that the officials of Central State Griffin Memorial Hospital or any of the state's other mental hospitals make a report in writing to the committing court nor did the court by its order issued committing said petitioner to Central State Griffin Memorial Hospital for observation make such a requirement.

We are unable to say that the court was arbitrary and capricious in entering his order to return the petitioner to Oklahoma County on December 30, 1960 and making a further finding that "observation has disclosed that said defendant has been found to be without mental disorder". The Court may have made his order relying in part on the letter dated December 24, 1960, and upon verbal information received from the officials of said institution.

We therefore hold that the motion of the petitioner after the court had found said petitioner without psychosis was not based upon a statutory or constitutional right of the accused and that the terms and condi-

tions as set forth under Title 43A Okl.St. Ann. § 60 were fully complied with both by the court and the officials of Central State Griffin Memorial Hospital.

 This being true, no prejudice could have resulted to the injury of the petitioner and it was not error for the court to fail to rule on said motion prior to proceeding to trial.

Moreover, the case made reveals that on the trial of the cause the testimony of the psychiatrists, Dr. James M. Berhman and Dr. Charles E. Smith, disclosed that the petitioner was possessed of the ability to assist in preparation of his case for trial. The following are excerpts from said testimony:

1. Direct Examination of James M. Berhman M.D., pp. 292–293, case made.

"Q. Do you believe, Doctor, in December, when you last saw him that he (the petitioner) had sufficient mentality and competency to confer with his lawyer and have,—and help his lawyer in his defense in this case?

"A. Yes, I do."

2. Direct Examination of Charles E. Smith, M. D., (p. 267, case made).

"Q. Do you believe that this defendant has enough mental capacity and rationality about him to help a lawyer in the defense of this case?

"A. Yes, sir, I do."

 We are of the opinion that trial courts should, in the future, as a part of their order of commitment for observation, direct that the officials of mental institutions to which such commitment is made submit a written report to the committing court concerning the mental condition of the accused, and require said report to be submitted a sufficient length of time prior to the trial to allow the state and the defense an ample opportunity to evaluate it.

 The petitioner's last contention is that during the course of the trial confer-ences were held between the trial court, the county attorney and the public defender and that the failure to record the conferences constituted fundamental error. Title 20 Okl.St.Ann. § 108, as amended, provides:

"It shall be the duty of the official court reporter to take down in shorthand, stenotype, or such other method as may be approved by the court and agreed to by all parties, and to correctly transcribe, when required, all the proceedings upon the trial of any cause, as well as all statements of counsel, the witnesses or the court, made during the trial of any cause or with reference to any cause pending for trial, when required by a party or attorney interested therein, and all other matters that might properly be a part of a case-made for appeal or proceeding in error. An attorney in any case pending shall have the right to request of the court or the official court reporter that all such statements or proceedings occurring in the presence of the official court reporter, or when his presence is required by such attorney, shall be taken and transcribed. A refusal of the court to permit, or, when requested, to require any statement to be taken down by the official court reporter, or transcribe after being taken down, upon the same being shown by affidavit or other direct and competent evidence, to the Supreme Court, shall be deemed prejudicial error, without regard to the merits thereof."

From the record it appears that no request was ever made of the court to require these conferences to be recorded by the court reporter under the provisions of Title 20, § 108, supra.

Moreover, although the Public Defender, Mr. Don Anderson was present when this matter was presented on oral argument before this court, the petitioner's counsel never sought at any time to show by Mr.

Anderson that the conferences heretofore referred to resulted in any injury to petitioner.

We are of the opinion that this contention is wholly without merit.

From the foregoing it appears that the trial court had jurisdiction of the person of the defendant, jurisdiction of the subject matter and the authority under the law to pronounce the judgment and sentence, and this being true, the writ prayed for is denied.

NIX, P. J., and BRETT, J., concur.